## No. 11,922.

### Isham *v*. The People.

Decided November 28, 1927.   Rehearing denied December 19, 1927.

Lunacy proceeding.   Respondent found insane.

## *Affirmed.*

1. Insane Persons—*Jurisdiction.* In lunacy proceedings, the facts essential to the exercise by county courts of jurisdiction under the statute, must appear upon the face of the record.   .

2. *Commissioners—Oath.* Commissioners in lunacy proceedings, being required by statute to make oath to the written report after findings, are exempt from taking oath of office on appointment, under section 8, article XII, of the Constitution.

3. *Commission Hearings—Notice.* Respondent in lunacy proceedings was served with a copy of the complaint and time fixing order for the first hearing several days later than the time fixed for the first meeting of the commission, subsequently a new date was fixed, no notice of which was given to respondent personally, although served on his guardian ad litem. Respondent was being detained at the Colorado General Hospital as a ward of the court during these proceedings. Under this state of facts it is held that failure to serve the respondent personally with notice of the subsequent date of meeting of the commission did not operate as a dismissal of the proceeding, nor take away the court's power to proceed further with the inquiry.

4. *Hearings—Presence of Respondent.* Where a respondent in lunacy proceedings was arrested and detained in a hospital under order of court, he became a party to the proceedings for all purposes, in legal effect was in court at the time of the making of supplemental orders, and was bound thereby.

5. Courts—*Jurisdiction.* Under section 50 of the Code, the court, from the time of filing of the complaint, is deemed to have acquired jurisdiction of the subject matter and to have control of all subsequent proceedings.

6. Insane Persons—*Commission Meetings—Presence of Respondent.* Where a respondent in lunacy proceedings, being physically able to attend the first meeting of the commission to consider his case,

escaped from confinement, concealed himself from the court's officers and voluntarily absented himself from the state, he could not take advantage of a noncompliance with the provision of the statute requiring his presence · at the meeting, in an attempt to set aside the judgment of the court declaring him insane.

7. *Presumption.* A person is presumably sane and so continues until declared insane in a proper proceeding.

8. *Jurisdiction.* So long as a respondent in lunacy proceedings remains beyond the jurisdiction of the court and declines to submit himself to its jurisdiction, he is not in a position to be heard to complain against its judgment.

9. *Jurisdiction.* Jurisdiction over the subject matter of lunacy inquests is conferred upon the county court by the Constitution and statutes and parties are powerless by act or conduct to confer or withhold such jurisdiction.

10 PRACTICE AND PROCEDURE—*Appearance—Special.* Under a special appearance only objections to the court's jurisdiction of the person may be raised.

11. *General Appearance.* A general appearance is entered by making a motion that involves the merits.

12. INSANE PERSONS—*Appearance.* Where a respondent in lunacy proceedings by motion requests the court not to approve a report of the lunacy commission in his case, the motion being based upon grounds going to the merits, his appearance is general and cures any alleged defect in the notice to him to appear in the proceeding.

13. *Commission—Physical Examination.* A commission in lunacy proceedings under the statute has the power to make the required physical examination at such time and place as it may determine. It does not necessarily have to be made at the first meeting.

14. *Commission—Physical Examination—Court Finding.* On a review of the record in lunacy proceedings, the court's action in overruling a motion to quash the report of the commission on the ground that no physical examination was had of respondent as required by statute, held justified by the record.

15. *Practice and Procedure.* All proceedings, orders and judgments under the lunacy statutes are of a continuing character and open to change or modification on application of any party in interest, in the court of original jurisdiction.

*Error to the County Court of Adams County, Hon.*
*George A. Garard, Judge.*

Mr. JOHN T. BOTTOM, Mr. FRED S. CALDWELL, for plaintiff in error.

Mr. HARRY S. CLASS, Mr. HARRY BEHM, for defendant in error.

*En Banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THIS writ of error is sued out by Alfred F. Isham to what is said to be a final judgment of the county court of Adams county, declaring him insane, which is supposed to have been rendered upon the approval by the court of the findings of the lunacy commission that he was so insane or distracted in mind as to endanger his own person and property and the person and property of others if allowed to go at large, and that by reason of his weakness of mind or disease was incapable, unassisted, properly to manage and take care of himself and his property.

If this record be subjected to the test applicable to the record of trial courts in ordinary civil actions, or even in special proceedings, plaintiff in error would not be entitled to a hearing. Among other defects we find that the record does not disclose that any final judgment of the court was pronounced, although the report of the lunacy commission above mentioned was approved. There is no certificate by the clerk of the court that the transcript contains a full and true account of the proceedings below. The alleged bill of exceptions embodied in the transcript is not authenticated by the certificate of the clerk of the court, and the bill on its face is restricted to what is said to be a final decision of the court and the appellate orders taken in connection therewith on the day the decision was pronounced, although an attempt had been made in the bill itself to recount divers

other previous proceedings theretofore had. Advantage of these infirmities has not been taken by the defendant in error and both parties upon this review in their briefs have proceeded upon the assumption that the record proper and the bill of exceptions are sufficient to call for a decision of this court. We, therefore, shall dispose of this case upon the record before us, not because plaintiff in error is of right entitled to be heard, but because we believe that this unfortunate controversy should be speedily determined for the benefit of both parties and the state.

Mary H. Isham, the wife of Alfred F. Isham, the alleged lunatic, lodged in the county court of Adams county a complaint in lunacy against her husband. The complaint was verified, and apparently filed July 22, 1926. Thereupon and on the same day the county court made an order directed to the sheriff of the county immediately to take Mr. Isham into custody and until further order of the court to confine him in the Colorado General Hospital pending the determination of the inquiry as to his mental condition, and further ordered that Isham be required to appear before the lunacy commission at Brighton, the county seat, on the 30th day of July, 1926, at 10 o'clock of the forenoon of that day. The sheriff was further ordered to, and he did, deliver to Mr. Isham upon his apprehension a copy of the lunacy complaint and a copy of the court's order, and to make return thereon. The return of the officer shows due service. On the same day, July 22, the court entered an order appointing Dr. W. K. Hotchkiss and Dr. J. C. McCann, licensed physicians of the county, of reputable character, as a lunacy commission to inquire into Mr. Isham's mental condition and directed that its first session should be held at Brighton on the 30th day of July, 1926, at the hour of 10 o'clock in the forenoon. On the same day the court appointed W. W. Gaunt, an attorney and resident of the county, guardian ad litem of the respondent Isham, to represent him in the lunacy proceeding and

included in the order the same provision, that was contained in the order appointing the lunacy commission, as to the time of its first meeting. It appears that the respondent Isham was not apprehended until the 3rd day of August, 1926, and, therefore, the order of the court above mentioned fixing July 30 as the day of the first meeting could not be complied with. The court, taking, as it might, notice of its own records in the case, thereupon on the 3rd day of August, being the day of the arrest of the respondent, entered an order in the proceeding directed to the lunacy commission changing the date of its first meeting from July 30, and fixing in lieu thereof August 14, 1926. The members of the lunacy commission acknowledged receipt of this notice. A like notice was served upon the guardian ad litem, and a similar notice was directed to the alleged lunatic but whether it was served upon him personally the record does not disclose, but his counsel say, and such seems to be the fact, notice was not given to him. The record then contains what is designated as supplemental orders of August 3, which, after reciting the lunacy complaint and the orders above recited, and further reciting that Isham was taken into custody, but not until August 3, and was then being detained in the Colorado General Hospital under the previous order of July 22, the court, by virtue of the premises, changed the date of the first meeting of the commissioners from July 30 to the 14th day of August. August 11 following, John T. Bottom and Fred S. Caldwell, attorneys for Alfred F. Isham the respondent, filed in the proceeding what is denominated: "Special appearance and motion to quash," and in the body of the motion say: "Comes now the defendant herein, Alfred F. Isham, by his attorneys, John T. Bottom and Fred S. Caldwell, and appearing specially herein for the purpose only of presenting this motion to quash, and gives the court to know and be informed" that the defendant Isham was not in the county of Adams, state of Colorado, at the time the proceeding was com-

menced, and was not and is not now a resident of Adams county, but, on the contrary, was, and ever since has been, and now is, a resident of the City and County of Denver and state of Colorado, and was in Denver at the time the process and order of the court was issued and served on him and that he was a resident of the City and County of Denver and physically present therein at the time he was taken into custody pursuant to the order of the court heretofore issued herein, by reason whereof the defendant says the Adams county court is without jurisdiction to entertain, hear or determine the complaint in lunacy filed against him and, therefore, prays for an order of court quashing all orders and processes heretofore made and entered in the proceeding. This motion seems not to have been verified. It appears, however, that upon the hearing by the court affidavits pro and con were filed and it may be that other evidence was taken as to the respondent's residence and domicile. The county court denied this motion to quash. The time of filing the same must have been before the 18th of September, 1926, because the parties had theretofore entered into a stipulation fixing that date for the hearing, and it also appears that some of the affidavits were filed as early as September 11. The record also shows that Isham was placed in the Colorado General Hospital, as the county court ordered, upon the 3rd day of August, 1926. From September 25, 1926, which it is assumed by plaintiff in error is the date on which the motion to quash was determined, various continuances were had from time to time until May 11, 1927, when the record recites that on that day a hearing of the court was had on the report of the lunacy commission, which must have been filed at that time, or theretofore. Mr. Behm, the county attorney, and H. S. Class, special counsel, W. W. Gaunt, guardian ad litem, appeared generally, and John T. Bottom and Fred S. Caldwell for Isham, appearing specially for the purpose of making jurisdictional objections only. Isham's counsel re-

quested further time to present objections in writing upon such objections to the receiving, filing and approval of the report. They were given additional time until May 24, 1927, at which time the court, after argument, entered an order overruling the objections of Isham's counsel thereto, and thereupon approved the report and the findings of the commission. The guardian ad litem objected to the report of the lunacy commission but he has abandoned his objections, at least has not himself, or in connection with counsel for Mr. Isham, appeared here in connection with this pending writ of error.

In the objections of the respondent his counsel say that they appear specially for the purpose of objecting upon jurisdictional grounds only. The objections which they specify are as follows: (1) That the lunacy commission acted as such without having previously qualified by taking an oath of office although, as appears from the record, they made oath to their findings and report when it was filed with the court; (2) no notice of the time and place of the meeting of the commission which was the first and only meeting had or held by them, was given or served upon the respondent as required by law; (3) all of the commission's proceedings and actions were taken, done and had at their first meeting in the absence of the respondent Isham, contrary to the mandatory terms and provisions of our statutes, and that at no time did the commission or the members thereof make an examination of Isham, by reason whereof, counsel say, the commission was without jurisdiction to hold any first meeting and all their acts and proceedings were without authority of law and wholly void, including their alleged report finding Isham insane, and that the county court itself and the judge thereof were and are without jurisdiction and lacked the power and authority to approve or in any manner recognize as valid the void report of the commission. The objections were verified by one of Isham's counsel. To this document denominated "Objection," there is a long answering affidavit by counsel

for Mrs. Isham who filed the complaint, and this affidavit is not denied. Among other things it is stated therein that Isham was not physically present at the time of the first meeting, or others if there were any, of the commission and then says that at the time Isham, having been seized and taken into custody by the sheriff of the county, under the order of the county court of July 22 so ordering, was thereupon placed by the sheriff, and was then confined and had been detained, in the psychopathic ward of the Colorado General Hospital up to and until the 15th day of January, 1927, when he then escaped from the custody and control of the hospital officers and voluntarily decamped and departed and ever since that time has voluntarily secreted and hid himself from the officers of the law and that his whereabouts ever since that time are to the people of the state of Colorado unknown.

As we understand the record it is conceded that Isham, at the time of the final hearing before the commission, was in another state; that while he theretofore was in custody of the officials and officers of the court he had appeared in person and by his counsel and on September 29, 1926, had sued out a writ of habeas corpus in the district court of the City and County of Denver in which he claimed that he was illegally restrained of his liberty by the orders and process of the county court of Adams county. The writ of habeas corpus was quashed and dismissed by the district court and Isham was remanded to, and was placed in, the custody of the hospital officials. Subsequently this judgment of the Denver court was by writ of error taken to our Supreme Court and such proceedings had therein that the judgment reviewed was affirmed and a petition for rehearing was filed and the same was denied. *Isham v. Miller,* 80 Colo. 380, 252 Pac. 353. At some time between the date of the affirmance on December 27, 1926, by us of the judgment of the district court, and the time when the petition for rehearing was denied, January 24, 1927, Isham secretly and

clandestinely decamped from the custody of the said officials, while being detained in the hospital, and his whereabouts are still unknown. Afterward and about the 10th day of February, 1927, his attorneys commenced a proceeding in the district court of Adams county whereby they sought to prohibit hearing of the lunacy commission in this cause, but the writ of prohibition was refused. During all of these times Isham was represented by counsel of his own choosing and all expenses in connection therewith have been furnished and provided. The affidavit further states that another suit in the district court of Adams county was instituted by Isham through his counsel, and the same was heard by Judge Butler of the Denver district court, who was called in by the presiding judge of the Adams county court, to hear the case, and the court decreed an equal division of all the property and assets of Isham and his wife, one-half to each, but upon a motion for a new trial, upon technical grounds, the court held that the suit in question was not maintainable, but reaffirmed and reiterated his finding with respect to the property rights. That during all this litigation, covering a period of more than two years before the lunacy commission, Isham and his attorneys were kept fully and completely advised of everything and at all times were fully and completely advised of his mental and physical condition; that the delay in the hearing has been occasioned by the litigation as above outlined on the part of the plaintiff in error and his attorneys, and also by reason of negotiations looking toward a settlement of the property rights of the respondent and his wife, of which the respondent has been fully cognizant and in which he participated. The record further discloses that the complainant's motion to strike from the files the objections of the respondent to the report of the lunacy commission was denied, and that Isham by his counsel filed a motion to strike from the complainant's answer to the respondent's objection to the approval of the report of the lunacy commission,

which was also denied. The trial court made special findings upon these various motions of the parties and, among other things, found that while the respondent was in the hospital, and while he was a ward of the court, he wilfully and without permission of the court, or the superintendent or other authorities of the hospital, escaped and has ever since evaded and avoided the authority and custody of the court and absented himself from the hearings. The court's conclusion was that the respondent could not take advantage of his own wrongful acts in evading and obstructing the proceedings and the processes of the court and was not entitled to be heard unless he first submitted himself to the court's jurisdiction, which he did not do. The court found that the proceedings had been duly and lawfully continued from time to time from its inception down to the date of the court's order approving the commission's report. In what is called the bill of exceptions the court at length explains its position and the reason for its various orders and final judgment. The court specifically refers to the fact that the respondent at all times during the proceeding had a competent and faithful guardian ad litem who represented him throughout, and who was present in court at all times and at all hearings and had due notice thereof; that it was the duty of the respondent after service of process upon him to attend the hearings and not absent himself therefrom whether at the time he was sane or insane and that he was physically able to be present but chose to absent himself. For that reason it was impossible for the commission to conduct a hearing in the presence of the respondent for which he alone is responsible. The record also discloses that the court announced in the presence of counsel for respondent, after having approved the commission's report, that respondent might have five days in which to have a jury trial if he desired it, and on request of his counsel made an order dispensing with the necessity of a motion for a new trial. The court then asked counsel if they waived

their right to a jury trial and counsel replied that they waived nothing. The presiding judge then said that, as the statute provides, "you are entitled to a jury trial within five days if you desire it." No request was made for a trial by jury, notwithstanding the fact that the court repeated the declaration that a jury might be had at any time within five days if counsel for respondent requested it.

We have set out in detail all the proceedings in this case as they furnish the groundwork upon which a decision here must be based. Let us see what law and justice demand upon such a state of facts.

Respondent's general, are really included in his specific, assignments of error which, as summarized by him, are: (1) This being a special statutory proceeding not according to the course of the common law, the facts essential to the exercise of jurisdiction thereunder must appear on the face of the record. (2) The commissioners being civil officers did not, before entering upon the duties of their office, take and subscribe an oath to support the Constitution of the United States and of the state and faithfully to perform their official duties as prescribed by section 8 of article XII of our Constitution. (3) The five days' notice required by the statute to the respondent of the first meeting of the commission was not given. (4) Respondent was not present at the first meeting. (5) No physical examination of respondent was had by the members of the commission as the statute requires.

It will clarify the discussion by summarizing the pertinent provisions of our statute, sections 549 to 555, and sections 558 and 565, chapter 18, C. L. 1921, which are the provisions concerning inquisitions of lunacy or insanity. Our statute defines "an insane person" as used in the section and provides a complete procedure for inquisitions thereunder. It directs county judges of each county of the state to appoint a permanent lunacy commission, the tenure of office of its members being at

their pleasure, and makes it their duty to consider and take under observation patients who are referred to them by the judge. The judge, however, may at his election appoint a new and different commission for each investigation. The judge must by order fix the time and place for its first session but, with this exception, it may sit at such time or times as it may determine and shall make an examination of the person whose mental condition is the subject of inquiry. At least five days' notice of the time and place of the first session must be given to such respondent by the judge or clerk, unless, in an aggravated case, waiver of such notice is made by the guardian ad litem with the permission of the court or judge. When a verified complaint by some reputable person is filed in the court alleging that any person whose mental condition is such as to make him an insane person within the definition of the act, or where he is incapable, unaided, properly to care for himself and his property, or where it is unsafe for him to be at large and likely to be imposed upon by designing and artful persons, the court or judge must forthwith issue an order in the name of the people directing any court officer to execute the same immediately by taking the patient into custody pending the determination of his mental state. The person thus seized under the order must be served with a copy of the complaint and the arrest order, and, until final hearing, is to be confined in the Colorado General Hospital at Denver or in some other convenient and suitable place to be designated by the court or judge. The complaint shall be referred to the lunacy commission and the patient must be present at its first session and has the right to be present at all of its meetings. Within a certain time all of the commissioners thus appointed must make a return into court answering the prescribed questions as to respondent's sanity and as to his property and must subscribe and make oath thereto and present the same to the court. The guardian ad litem must be present at all meetings. To make the report

effective it must be approved by the court or judge, whereupon the patient shall be committed to the state hospital or, in certain contingencies, to some other suitable place. If the respondent or any other person in his behalf, is dissatisfied with the commitment he may within five days after the making of such order demand in writing that the questions considered by the commission be tried by a jury before the county court. Trial must be as provided by law for trial of civil cases before a jury and a guardian ad litem must be appointed and be present at the trial, unless the respondent appears by counsel of his own selection, and the jury must return answer to such interrogatories. On the jury's findings the court must enter a decree in accordance therewith; either of commitment, or discharge, as such findings require.

1. Taking these assignments in their order, we assume with respondent's counsel, in what they call the first assignment, that the facts essential to the exercise by county courts of jurisdiction under the statute must appear on the face of the record.

2. The next assignment is that the commissioners in lunacy are civil officers and as such must, but the commissioners here did not, before entering upon the duties of their office, take and subscribe an oath to support the Constitution of the United States and of the state of Colorado and faithfully to perform the duties of their office as section 8 of article XII of our state Constitution requires of civil officers. Assuming again, but not deciding, that these commissioners are civil officers, the section invoked exempts from the requirement such inferior civil officers as may be by law exempted. Section 9 of the same article provides that every civil officer, except those of the executive department and judges of the Supreme, and district, courts, shall file his oath in the office of the county clerk of the county wherein he shall have been elected. If these commissioners are civil officers and were not elected, as they were not, it would seem that they are not within the scope of the require-

ment; but if that be not so, then the very statute creating the office has exempted these commissioners from taking such preliminary oath by that provision of the statute which requires them to make oath to the written report of their findings. This oath is the equivalent of, or rather the substitute for, the oath prescribed for superior civil officers generally. The exemption is within the exception of section 8. This assignment is without merit.

3. The statute provides that, except in a certain contingency said not to be present in this case, at least five days' notice must be given to a respondent of the first meeting of the lunacy commission. Plaintiff in error says that this notice was not given to him. Referring to the above statement of facts we find that in the court's order of July 22, 1926, July 30 of the same month was fixed as the time of the first session of the commission. The respondent was duly served with a copy of the complaint and of this time-fixing order. He was not, however, served with these papers until August 3, 1926, several days later than the time therein fixed for the first meeting. Thereupon the court on August 3 made supplemental orders in which, among other things, the date of the first session was changed from July 30 to August 14. Due notice thereof was given to the commissioners and to the guardian ad litem who had theretofore been appointed. It seems that no notice of the new dates was given to the respondent himself who at the time had been placed, and at all times after his arrest or seizure under the order of July 22 was physically, in the Colorado General Hospital in Denver, and was there being detained as a ward of the court pending final determination of the inquisition, as the statute expressly says might be done with him. The respondent was duly served with notice of the first session as stated but that day was past at the time of service. It was, of course, impossible for him then to be present at a time in the past. But this failure to serve respondent personally with notice of the setting of a different and subsequent

date for the meeting of the commission, does not operate
as a dismissal of the proceeding, or take away the court's
power to proceed further with the inquiry. And this is
so because the respondent was still in the custody of the
court and because his guardian ad litem had been served
with notice of the subsequent setting, and by the statute
the guardian ad litem "shall represent the person com-
plained against and shall attend all meetings of the com-
mission." In its original order of July 22 the court
directed the sheriff immediately to take respondent into
custody and confine him in the Colorado General Hospital
pending determination of the inquiry and that he appear
before the lunacy commission on July 30. The latter
direction of this order, as to appearance before the com-
mission, of course could not, for the reason stated, be
literally complied with, but the former clause, as to
seizure and confinement, was executed by confining re-
spondent in the hospital. He was still in the hospital
and, therefore, in legal effect, in court at the time the
subsequent order changing the time of the first meeting
of the commission was made. If this were a civil action
under our Code, the court, from the time of the filing of
the complaint, would be deemed to have acquired juris-
diction and to have control of all subsequent proceedings.
Of course, the code provision to this effect does not mean
that the mere filing of the complaint confers jurisdiction
of the person of the defendant but refers only to the
subject matter. *Empire Cattle Co. v. Coldren,* 51 Colo.
115, 117 Pac. 1005. We do not cite this case because it
is in all respects applicable here, but upon principle and
by analogy we do not see why the arrest and confinement
of the respondent, under the order of the court, and his
subsequent commitment to the Colorado General Hospital
does not have the effect of making him a party to the
proceeding for all purposes. He was subject to the con-
trol of the court from that time forward and we repeat
that in law the respondent was present in court at the
time the supplemental orders were made and he is bound

by them. Moreover, the guardian ad litem was present in court and was served with notice. Considering the foregoing, therefore, we hold that the five days' notice was given to the respondent of the first meeting of the commission.

4. The statute as above outlined provides that the respondent must be present at the first meeting of the commission. He was not physically present. His guardian ad litem, however, was present at that meeting. But, says respondent, absence from the first meeting is not cured by the presence of his guardian. Under the facts of this case we think the respondent may not now complain. Whether he is sane or insane, he was physically able to be present. He chose to be absent. He escaped from the hospital, the place of his confinement, and did so voluntarily and has concealed himself from the court's officers, and, at the time of the final hearing by the court of the report of the commission, he was not physically in the state and could not be compelled by the trial court to be present at the trial. We think the trial court was right in its ruling that respondent may not now be heard in his request to set aside the order of the court approving the commissioners' findings of lunacy. He may not thus take advantage of his own wrongful conduct. The Supreme Court of the United States in *Chaloner v. Sherman*, 242 U. S. 455, 37 Sup. Ct. 136, 61 L. Ed. 427, is authority for this holding. Chaloner was a resident and citizen of Virginia. He owned property in the State of New York. In a lunacy proceeding in the New York court, Chaloner, being then in New York, was served with notice thereof and he had property therein. He was committed to a private hospital, was served with notice of the application to appoint a commission to inquire into his mental capacity, of the inquisition and of the motion to confirm its findings. He was physically able to attend, but did not appear or ask anyone to represent him or to seek an adjournment. He was then presumptively sane, and so continued, until declared insane in a

proper proceeding. At the inquisition the commission and jury, after hearing witnesses, concluded that his attendance was unnecessary and did not require it. The Supreme Court of the United States affirmed a decision of the New York court holding that due process was satisfied. It is true that the attack in that case was a collateral attack, but the court, in the course of its opinion, adverted to that fact and said that as the plaintiff had notice of the hearing, and an opportunity to be heard at every stage of the proceedings, the essential elements of due process of law were fully met. As the question of jurisdiction is the only point involved under this assignment, the decision of the Supreme Court of the United States is exactly in point. It will be observed that the respondent in these various applications has not offered to submit himself to the jurisdiction of the court, while prosecuting this writ of error through his attorneys, but still remains in another state beyond the jurisdiction of the courts of this state, hence they may not compel his attendance. So long as he persists in such conduct and declines to submit himself to the jurisdiction of the county court, he is not in a position even to be heard with a complaint against its judgment. *In re Blewitt,* 18 N. Y. Supp. 607, it was held that an application of an alleged insane person to set aside the adjudication against him will be dismissed where he refuses to submit himself to the jurisdiction of the court. In 32 C. J. p. 639, sec. 195, the author says that a lunatic generally must be present at a hearing, except where he has been duly notified, and that the court may, for a good reason, dispense with his presence in court, if he is served with notice. It would be difficult to conceive of a better reason for dispensing with the presence of a lunatic than the one that exists in this case, where he is voluntarily absent from the state and refuses to submit himself to the court's jurisdiction and the case is an aggravated one in the sense of the language of section 550 of the statute. His physical presence in the court, therefore, was not essential in this case to the court's jurisdiction.

There is another reason why this assignment is not tenable. We must assume that counsel appearing here for Isham, who appeared below, were authorized to represent him. After the commission filed its report in the court finding Isham insane and before the same was approved, his counsel selected by himself, appeared, as they say, "specially for the purpose of making jurisdictional objections only." They asked for, and were given, further time to present their objections in writing to the filing and approval by the court of the report of the commission. Within the extended period they filed written objections to the report on the ground that the lunacy commission acted without having previously taken an oath of office and that no notice of the time and place of the first meeting of the commission was given or served on the respondent, and upon the other grounds which are enumerated in the assignments of error. Counsel misconceive the nature and effect of their appearance. They say they appear "specially" but that does not necessarily make their appearance a special one. That depends upon the nature and character of the objections, to urge which they made such appearance. Counsel on this branch of the case say that it is important to bear in mind that the question involved is jurisdiction of the subject matter, and not jurisdiction of the person, and they assume that the court had acquired jurisdiction of the person of the respondent. The subject matter involved, they say, is the mental state or condition of the respondent. Counsel are in error, we think, in saying that in this appearance they are raising only the question of the court's jurisdiction of the subject matter. But if they were so restricting their appearance, and for that purpose only, they are mistaken in their contention as to its legal effect. The court unquestionably had, by virtue of our statute, jurisdiction of the subject matter of the proceeding, which was the mental state or condition of the respondent. Jurisdiction of the subject matter is conferred by the Constitution and laws of the state,

not by the action of one or both of the parties. The parties themselves are powerless, by act or conduct, either to confer upon, or withhold from, the court jurisdiction of the subject matter. That comes from the Constitution and laws of the state. If counsels' objection is that the court did not have jurisdiction of the person of the respondent at the time it confirmed the report of the commission—though they expressly disclaim that view—we have already seen that the court did have jurisdiction of his person. If counsel appeared, as they say they did, to raise objections to the court's jurisdiction of the subject matter, their appearance was a general, and not a special, one. In a special appearance only objections to the court's jurisdiction of the person may be raised. In 32 C. J., beginning at page 627, is a valuable note on lunacy inquisitions or inquiries, and in 4 C. J. page 1333, section 27, the author says: "Broadly stated, any action on the part of a defendant, except to object to the jurisdiction over his person which recognizes the case as in court, will constitute a general appearance. Thus a party makes a general appearance by objecting to the jurisdiction of the court over the subject matter of the action, whether the objection is made by a motion or by formal pleading." A general appearance is entered by making a motion that involves the merits. In 4 C. J. p. 1339, sec. 32, it is said that a motion grounded wholly or in part upon error in the judgment, or upon irregularities aside from the question of jurisdiction of the person, is such a waiver as constitutes an appearance. In *Everett v. Wilson,* 34 Colo. 476, 83 Pac. 211, was considered a motion of a defendant which "avowedly" was to test the jurisdiction of the court over the person of the defendant but which asked, in connection therewith, for relief upon grounds other than jurisdiction of his person. We held that this constituted a general appearance. This case was cited with approval on the same point in *Balfe v. Rumsey & Sikemeier,* 55 Colo. 97, 133 Pac. 417, Ann. Cas. 1914C, 692, the court

saying that relief which the defendant asks in his motion
is inconsistent with his "avowed" object to test juris-
diction of the court over his person, is a general ap-
pearance. So here. In this motion of the respondent
requesting the court not to approve the report of the
commission, he based the same upon grounds going to
the merits. The appearance was a general one in be-
half of the respondent and even though he had not there-
tofore appeared in the action he did appear by counsel
in this motion before final judgment was pronounced.
This cures any alleged defect in notice to him to appear
in the proceeding. See also, *Thomas v. Colorado Na-
tional Bank*, 11 Colo. 511, 514, 19 Pac. 501; *Stubbs v.
McGillis*, 44 Colo. 138, 144, 96 Pac. 1005, 18 L. R. A.
(N. S.) 405, 130 Am. St. Rep. 116.

5. Finally, it is said that no physical examination of
respondent was made by the members of the commission
as the statute requires, and this, being a mandatory re-
quirement, the court's judgment approving the report
cannot stand. It is true that the respondent was not
physically present in court at the time of the first meet-
ing of the commission, or at any other time after his
escape from custody, but we have already held that his
absence was not fatal to the validity of the judgment for
the reasons which we have given. Apparently the ob-
jection now urged is based upon the ground that, as the
respondent was not present at the first meeting, neces-
sarily the commission did not make any physical ex-
amination of him. The statute does not say that this
examination must be made at the first session. We think
the commission has the power to make the examination
at such time and place as it determines. The record dis-
closes in a verified answer of the people's counsel, which
was filed to the respondent's objection to the approval of
the report of the lunacy commission, that the two mem-
bers of the commission appointed by the court did make
an examination of Isham and at all times after their
appointment were thoroughly and completely advised of

his mental and physical condition. There is no denial of this statement. The statute expressly provides that after the commission is appointed its members may meet or sit at such place or places, and at such time or times, as they may, for themselves, determine. In the state of the record we are justified in concluding, as the same is not contradicted by the respondent, that the members of this commission, after they were appointed, met at the State General Hospital where the respondent was confined, and may there have observed and made an examination of his person. They did not make an examination of his person at the time of their first meeting because respondent was not present thereat. This is not enough to disprove or overcome the undenied verified answer of the people's counsel that the members actually did make a physical examination of respondent. The trial court, on conflicting affidavits presented by the parties at the hearing on the motion of respondent to quash the report of the commission, one of its grounds being that the commission did not make a physical examination of the respondent, found against the motion and in favor of the people, and we cannot say that it was not justified in the finding.

We are constrained to say that we are gratified to be able to affirm this judgment because we are satisfied that only by so doing will the property rights of both the complainant and the respondent be protected and the latter's welfare be conserved. Especially do we feel that this unfortunate respondent, subject as he would be and is to the persuasions of artful and designing persons, might involuntarily deprive himself of, or lose, all his worldly possessions, and deprive his wife, the complainant, of her interests therein. This court has held, *In re Rainbolt,* 64 Colo. 581, 172 Pac. 1068, that all proceedings, orders and judgments entered under the provisions of our statute are of a continuing character, and open to change or modification on application of any party in interest, in the court having original jurisdiction. That

decision is applicable here. If respondent's mental condition has changed for the better, or he has been restored to sanity, either he or some one acting in his behalf may have, if he submits himself to its jurisdiction, the appropriate relief by the county court of Adams county, the court of original jurisdiction. It follows that the judgment of the county court must be, and it is, affirmed.

Mr. Justice Whitford, Mr. Justice Sheafor and Mr. Justice Adams concur in the opinion; Mr. Justice Denison files a specially concurring opinion; Mr. Justice Butler concurs in the affirmance, but not in all the reasons assigned therefor; Mr. Chief Justice Burke did not hear the oral argument or participate in the decision.

MR. JUSTICE DENISON specially concurring.

I concur in the result for the following reasons:

The question of jurisdiction is settled by the general appearance of Isham's attorneys.

As to the claim that his presence was necessary at the first meeting of the commissioners, the substance of that requirement is that he be present at some meeting so that the commissioners may actually examine him personally; and so to be present is a privilege accorded by the law to him which he waives by absenting himself. If he is sane he has had full opportunity to appear and protect his rights. If he is insane the judgment is right.

As to mere errors, not jurisdictional, he is in no position to be heard since he has absconded and refuses to submit himself to the judgment of the county court, whether we affirm or reverse. *In re Blewitt,* 18 N. Y. Supp. 607.