[Civ. No. 16601.  Second Dist., Div. Two.  Nov. 24, 1948.]

ALLIE WALTERS SACKS, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents; CHARLES BOBST, Real Party in Interest.

John R. Sahanow, Bodkin, Breslin & Luddy and S. V. O. Prichard for Petitioner.

Harold W. Kennedy, County Counsel, and James A. Cobey, Deputy County Counsel, for Respondents.

Harold Slane and R. R. Sleeper for Real Party in Interest.

MOORE, P. J.—Petitioner seeks a writ to prohibit the superior court from proceeding to determine the need for the appointment of a guardian of her person and estate. In July, 1946, her brother, Charles Bobst, filed his petition with the clerk of respondent for the appointment of a guardian on the ground of petitioner's incompetency. The citation having been published, the court proceeded to make and enter its order declaring petitioner to be incompetent and appointed a guardian of her estate and person. However, by reason of the failure to serve petitioner personally with the citation the entire proceedings were void. (*Sacks* v. *Superior Court*, 79 Cal.App.2d 806 [180 P.2d 922]; same, 81 Cal.App.2d 684 [184 P.2d 684]; same, 31 Cal.2d 537 [190 P.2d 602].)

After failures to serve other citations on petitioner, respondent on June 1, 1948, ordered a citation in form and substance required by law (Prob. Code, § 1461*) returnable on June 11, 1948. Notwithstanding its personal service on petitioner she did not appear. Her counsel came at the time and place specified in the citation and advised the court that she refused to appear in court though physically able to do so. Neither a physician nor the superintendent of a state hospital had certified that she was physically unable to attend. She was then outside the state and had published in a daily

---

*"'Any relative or friend may file a verified petition alleging that a person is insane or incompetent, and setting forth the names and residences, so far as they are known to the petitioner, of the relatives of the alleged insane or incompetent person within the second degree residing in this State; notice of the nature of the proceedings and of the time and place of the hearing shall be mailed at least five (5) days before such hearing date to each of such relatives. Any relative or friend of the alleged insane or incompetent person may appear and oppose the petition.

"Thereupon the clerk shall set the same for hearing by the court and issue a citation directed to said alleged insane or incompetent person setting forth the time and place of hearing so fixed by him. Said citation shall be personally served on the alleged insane or incompetent person in the same manner as provided by law for service and summons at least five days before the time of hearing. Such person, if able to attend, must be produced at the hearing, and if not able to attend by reason of physical inability, such inability must be evidenced by the affidavit and certificate of a duly licensed physician or surgeon, or other duly licensed medical practitioner, unless alleged insane or incompetent person is a patient at a State hospital in this State in which case the certificate of the medical superintendent or acting medical superintendent of such State hospital to the effect that such patient is unable to attend shall be prima facie evidence of that fact. (Amend. Stats. 1943, ch. 473, § 1.)"

newspaper that she would not appear in court and was "leaving California for good." After a witness had been sworn, petitioner's counsel objected to the taking of any testimony on the ground that the court had no jurisdiction over the citee for the reasons: (1) she had refused to obey the court's order to appear in court; (2) she was physically able to be present; (3) no new or amended petition had been filed by the brother since the first citation had issued. The objection was overruled and some evidence received. The court then continued the matter to June 14 and directed that a bench warrant issue for Mrs. Sacks. In the interim the alternative writ herein was issued.

The only question for decision is whether the court had jurisdiction to hear and determine the matter of petitioner's alleged incompetency despite her counsel's objections.

In his petition the brother alleged his sister's ownership of a valuable estate; her age of 80 years; her marriage in Las Vegas, Nevada, in September, 1944; her suit to annul that marriage on the ground of fraud in procuring her consent; her husband's obtaining conveyances of her properties without consideration; the expenditure of large sums to retrieve her properties; her testifying against her husband before the grand jury; her execution of bail bond as surety for his appearance and her surreptitious disappearance with him to parts unknown. The petition alleged that Mrs. Sacks could not comprehend her condition, needed proper medical care, was the dupe of designing persons and should have an impartial guardian.

Such allegations are serious and deserve an investigation by respondent. The sinister shadow projected by the brother's petition finds its counterpart in her persistent refusal to submit to a trial of her sanity, and in her assertion in the instant petition that respondent court is deprived of jurisdiction over her solely by virtue of her wilful absence from that court.

From the statement of her counsel and the lack of medical proof of her physical debility, it is a fair inference that Mrs. Sacks was physically able to attend court. Indeed, she now relates to this court that on June 11, 1948, she was physically able to attend the hearing. ▮ The trial judge in the exercise of his exclusive province having determined that she was able to answer the citation by a personal appearance, properly proceeded to discharge his duty to try the issues raised by her brother's petition. No other official or tribunal could

make a finding of the truth or falsity of its allegations. (*Guardianship of Andrews,* 17 Cal.2d 500, 502 [110 P.2d 399]; *Buchanan* v. *Superior Court,* 209 Cal. 408, 411 [287 P. 474].)

██ The citation is a writ commonly used in probate courts (14 C.J.S. 1125) for the purpose of commanding the citee to appear at a specified time and to do the act named or show cause why he should not do so. As such process it is analogous to the summons at law. (Bouvier.) Such is clearly its office under section 1461. ██ When properly and personally served and the citee fails to appear the court may enter such judgment as the law and the evidence require. A person accused of a dementia is not sacrosant. He is neither above nor below the law. Statutes enacted to protect a person against his own misguided acts or against the avarice and greed of others are conceived in the noblest of paternalistic principles for the preservation of the estate and the security of such person and for the serenity of society as well.

If an alleged incompetent could defeat the superior court of jurisdiction by a mere refusal to respond to a citation, the misguidance of his person and the losses of his estate would fall far short of the protection and security intended by the authors of the Probate Code. The contention that the court is divested of jurisdiction by the naked act of a refusal to respond to a citation is contrary to the very purpose and spirit of the law. Such statutes do not constitute pawns to be used in strategical games of wit but are enacted for social welfare and for the protection of those who are so unfortunate as to suffer brain decadence or disorders. It is inconceivable that the Legislature could have intended that the superior court should not proceed to try the petition accusing such person because the alleged incompetent is not "produced in court." That phrase of section 1461 necessarily carries the implied condition, "if it is reasonably possible." (See *Bartlett* v. *Bell,* 125 Okla. 236 [257 P. 309].) The legislators could not have intended that an alleged incompetent after being cited might be kidnaped and secreted or conveyed to a foreign land, his estate stolen, and his person desecrated and violated by his captors while the superior court is held in a vise by the sterility of the law. The modern state does not thus function. The obligation of every unit of society to protect his person and to guard against his indigence and the ultimate necessity of his support by charity compels a construction of section 1461 that will direct the superior court to proceed

with the investigation of allegations against a citee and to make such orders as its findings warrant.

While the appellate courts of this state have hitherto published no precedent for the foregoing interpretation of section 1461, still it is not without support. In an action to annul the deed of an alleged incompetent who was whisked out of the state of Oklahoma by parties having ulterior motives after having been served with notice of the incompetency proceeding, it was held that the deed executed by him in Colorado was void for the reason that he had been decreed to be an incompetent following ·service of the notice on him of the proceedings in Oklahoma. (*Bartlett* v. *Bell, supra.*) In *Isham* v. *People*, 82 Colo. 550 [262 P. 89], the alleged incompetent wilfully concealed himself from the court's officers after he had been personally served with notice of hearings to determine his sanity. In affirming a judgment of insanity the court held that he could not take advantage of his own wrongful act by declining to submit himself to the jurisdiction of the court when he was physically able to do so and had full notice of the proceedings. To the same effect is *In re Blewitt*, 64 Hun. 632 [18 N.Y.S. 607]. In *Chaloner* v. *Sherman*, 242 U.S. 455 [37 S.Ct. 136, 61 L.Ed. 427], it was held that in such proceedings the essential elements of due process are present where notice and opportunity to be heard are given. "As the plaintiff had notice and opportunity to be heard at each stage of these proceedings the essential elements of due process of law were fully met."

From the record herein the citee is evidently a mentally frail creature who has already been sorely buffeted to the detriment of her fortune and to the increment of her sorrow. She once testified that Mr. Sacks had taken more than $60,000 of her money and deeds to her properties in South Dakota. She was there in 1947 declared an incompetent and a guardian was appointed. Her brother Charles has been her lifelong and devoted friend. For many years he lived in her home. On beholding his sister as the star performer in such a tragedy as that described in his pleading he would have been false to the noblest sentiments of manhood not to attempt to avert her further losses or unhappiness. Shall his purpose be frustrated now by her wilful absence from the state or by her own self-concealment while it reasonably appears that by repetitions of her alleged performances she is destined to become a public charge? Upon his allegations and the service of the citation it would be a warped construction of the statute

to hold that because of her refusal to appear the court may not hear the proof and determine whether or not the appointment of a guardian is necessary.

Petitioner herein is in no position to ask that respondent court be prohibited from hearing the petition and entering its judgment. Despite her resolute abstention from entering the court that sought to protect her she is now "in" that court and under its jurisdiction by virtue of a meticulous compliance with the statute in the filing of a valid petition and of the issuance and service of the citation and notices.

Finally, petitioner's objection to a hearing because there was no new or amended pleading is without support. The petition for the appointment of a guardian stated all the essentials of a valid pleading for the purpose of a trial of the issue of incompetency. If the evidence adduced should establish that she is now competent the petition will be rejected. If it establishes to respondent's satisfaction the allegations of the petition she will have the right of appeal. At any rate, the statute must not be nullified by virtue of her bold defiance of a statutory process.

It is ordered that Mr. Bobst's motion to strike portions of the petition is denied, that the alternative writ is vacated and a peremptory writ is denied.

McComb, J., and Wilson, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied January 20, 1949.